# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CR-0171-004-CVE |
| | ) |
| DOMINGO FRANCISCO AGUIRRE-DIAZ, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is the Government's Motion to Revoke Order Granting Conditions of Release (Dkt. # 86). Plaintiff filed a motion for detention (Dkt. # 20) as to defendant Domingo Francisco Aguirre-Diaz and requested a hearing before a magistrate judge. The magistrate judge held a detention hearing and subsequently entered an order releasing defendant pending trial subject to conditions of pretrial release. Dkt. ## 82, 83. Plaintiff asks the Court to revoke the magistrate judge's order granting defendant pretrial release. Dkt. # 86. Defendant was ordered to file an expedited response to plaintiff's motion, and defendant has filed a response (Dkt. # 91). The Court has also considered the motion for detention and related briefing (Dkt. ## 20, 66, 68, 69 79), the transcript of the detention hearing (Dkt. # 90), the magistrate judge's oral ruling stating his findings as to the motion for detention, and the pretrial services report prepared by the United States Probation Office. The Court finds that it has a sufficient record to rule on plaintiff's motion, and it is unnecessary to set plaintiff's motion for an evidentiary hearing.

## I.

On August 8, 2018, a grand jury returned an indictment charging defendant and others with money laundering conspiracy (count one), and other defendants were also charged with drug conspiracy, distribution of methamphetamine, maintaining a drug involved premises, and use of a communication facility to commit, cause, or facilitate a drug trafficking felony. Dkt. # 2. In a separate criminal case, defendant is accused of participating in another money laundering conspiracy, and the money laundering was allegedly committed as part of a conspiracy to distribute methamphetamine. United States of America v. Felix Ordaz-Miranda et al., 18-CR-139-GKF, Dkt. # 17 (N.D. Okla.). Plaintiff represents that each case concerns the operations of a separate drug trafficking organization (DTO). Dkt. # 68, at 8.

The investigation into the DTOs was lengthy and plaintiff intercepted communications on telephones used by members of the alleged conspiracies. Id. at 2. Agents involved in the investigation came to believe that Alfredo Herrera used his business, Casa Herrera, to launder money for the DTOs. Id. Defendant worked as the manager of Casa Herrera, and plaintiff alleges that defendant played a pivotal role in laundering money for the DTOs. Dkt. # 86, at 3. During an intercepted call, Felix Ordaz-Miranda and Herrera discussed how much would be charged by Herrera to wire money to Mexico, and Felix Ordaz-Miranda stated that defendant had advised him that defendant would charge $50 for every $1,000 wired to Mexico. Dkt. # 69, at 2. Felix Ordaz-Miranda complained that defendant may have caused confusion by using the wrong names in wire transfers, and Felix Ordaz-Miranda would prefer to deliver his money directly to Javier Passement. Id. From the intercepted calls, it appears that Herrera frequently communicated with Felix Ordaz-Miranda and that Felix Ordaz-Miranda was in Mexico. Felix Ordaz-Miranda stated that he would

have his brother, Cesar Ordaz-Miranda, deliver money to Herrera, and Herrera and his employees were frequently sending money to Felix Ordaz-Miranda in Mexico. Id. at 5. One of the calls suggests that defendant was taking a more active role in the money laundering conspiracy, and that Felix Ordaz-Miranda preferred to deal directly with Herrera. Id. at 6. On May 30, 2018, Passement and Herrera spoke after learning that "Guero," the money man for a DTO operated by "El Lobo," was arrested, and Passement asked Herrera if they would keep the rate charged for moving money for the Lobo DTO the same in light of the arrest. Id. at 11. A phone conversation between Passement and defendants shows that defendant was actively involved in laundering money for the Lobo DTO and defendant was responsible for setting the "tariff" for sending money to Mexico. Id. at 12.

Defendant was arrested on August 15, 2018, and he made his initial appearance on the same day. Defendant appeared for an initial appearance and Fred Randolph Lynn was appointed to represent him. Dkt. # 41. Plaintiff filed a motion to detain defendant pending trial (Dkt. # 20), and a detention hearing was set for August 21, 2018. Lynn filed a response (Dkt. # 66) to the motion for detention. At the detention hearing, counsel for plaintiff stated that it could call Task Force Officer William Mackenzie to testify, but his testimony would be consistent with the briefing and evidence that had already been filed. Dkt. # 90, at 15. In addition to the intercepted wire communications, plaintiff advised the magistrate judge that the presumption of detention applied in this case, because defendant was charged with a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq., for which defendant could be sentence to at least 10 years imprisonment. 18 U.S.C. § 3142(e)(3); Dkt. # 68, at 7. Plaintiff asked the magistrate judge to consider that defendant played an integral role in laundering money for a large scale DTO, and defendant's employer, Casa

Herrera, has a direct line of communication to a Mexican supplier of illegal drugs. Dkt. # 68, at 8. The intercepted phone calls showed that defendant was knowingly sending money to Mexico on behalf of a DTO, and there was no basis to infer that defendant was unintentionally or mistakenly acting to further the interests of a DTO. Id. Plaintiff acknowledged that defendant had no prior criminal history, but the intercepted communications show that the lack of criminal history was not necessarily indicative of his character. Id. Plaintiff also noted that defendant's wife was illegally in the United States and had been deported at least twice. Id.

Defendant called four witnesses at the detention hearing. Defendant's pastor, Alejandro Martinez, testified that he has known defendant for about three years, and defendant regularly attends church services with his wife. Dkt. # 90, at 17. Martinez had not known defendant to engage in acts of violence, and he did not have any reason to believe that defendant was dangerous. Id. at 19. Martinez did not believe that defendant was a flight risk, but he was unaware that defendant's wife was illegally in the United States. Id. at 25. Jose Aguirre, defendant's son, testified that he speaks to his father every night on the phone, and most of defendant's close relatives reside in the Tulsa area. Id. at 28-29. Jose Aguirre stated that his father could reside with him if defendant were released pending trial, and Jose Aguirre would not object to probation officers visiting his house. Id. at 29-30. Jose Aguirre testified that he had communicated with a previous employer of defendant, and he believed that defendant could resume his former employment. Id. at 31. On cross-examination, Jose Aguirre explained that defendant's former employer operates a similar business to Casa Herrera, and defendant would be handling check cashing and money transfers. Id. at 32. A member of defendant's church, Oscar Aguirre, testified that defendant is actively involved in the church, and he has not known defendant to be a violent person. Id. at 34-35.

4

Carlos Aguirre, another of defendant's sons, testified that defendant lives with him in Broken Arrow, Oklahoma, along with defendant's wife and Carlos Aguirre's girlfriend, and defendant owns the home. Id. at 37. Carlos Aguirre stated that defendant could continue to reside at the home pending trial, and he would not object to visits from a probation officer. Id. at 39.

A pretrial services report was provided to the magistrate judge, and the report states that defendant is 60 years old and he is currently married to Olga Mendoza. The couple has three adult children. Defendant possesses a passport, and he has traveled to Mexico. Defendant was employed by Casa Herrera at the time of his arrest. The pretrial services report did not advise the magistrate judge that defendant's wife was illegally in the United States or that she had previously been deported. Defendant does not have any criminal history. The report recommends that defendant be released pending trial subject to certain conditions.

The magistrate judge found that defendant should be released pending trial, and he noted that there was a presumption of detention in this case. However, he found that the presumption had been rebutted based on defendant's lack of criminal history, his long-term residency in the Tulsa area, and the number of relatives in the area. The magistrate judge also noted that defendant could obtain employment at another check-cashing business while awaiting trial. Counsel for plaintiff advised the magistrate judge that she would be filing a motion to revoke the order granting defendant pretrial release in both criminal cases, and the magistrate judge ordered that defendant be detained until plaintiff's motions were resolved.

## II.

Plaintiff asks the Court to revoke the order releasing defendant subject to conditions of pretrial release, and it argues that defendant did not rebut the presumption of detention in this case.

Dkt. # 86, at 3. Defendant responds that the magistrate judge correctly found that defendant was not a flight risk or a danger to the community, and he asks the Court to deny plaintiff's motion to revoke his pretrial release. Dkt. # 91.

Under 18 U.S.C. § 3145(a)(1), an attorney for the government may file "with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . ." The Tenth Circuit requires this Court to conduct de novo review of a magistrate judge's detention order. United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003). A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary or it may rule on the written pleadings and evidence if the factual record is sufficient. United States v. King, 849 F.2d 485, 490-91 (11th Cir. 1988); United States v. Williams, 753 F.2d 329, 334 (4th Cir. 1985). The Court has determined that it has a sufficient factual record and that another evidentiary hearing is unnecessary.

At the original detention hearing, plaintiff invoked the presumption of detention, pursuant to 18 U.S.C. § 3142(e), that no conditions of release will assure defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . ."). When the government invokes the presumption of detention, the burden shifts to the defendant to produce evidence rebutting the presumption. United States v. Stricklin, 932 F.2d 1353, 1354 (10th Cir. 1991). The defendant's burden of production is not heavy, but some evidence must be produced.

6

Id. at 1355. Even if the defendant satisfies his burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain." Id.; see also United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989) ("the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society"). At all times, the burden of persuasion remains with the government. United States v. Cook, 880 F.2d 1158, 1162 (10th Cir. 1989).

Applying the de novo standard of review, the Court will consider the factors stated in 18 U.S.C. § 3142(g) to determine whether defendant has rebutted the presumption of detention. Assuming defendant rebuts the presumption, the Court must also determine if there are conditions of release that will ensure that defendant will appear as required and protect the safety of the community. In a presumption case, the defendant has the burden of production. The first factor to consider is the "nature and circumstances of the offense charged," and specifically courts are told to look to "whether the offense ... involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). In this case, defendant has been charged with conspiracy to launder money on behalf of a DTO that was derived as a result of "specified unlawful activity," and "specified unlawful activity" includes any offense involving the sale, distribution, or importation of a controlled substance. 18 U.S.C. § 1956(c)(7)(i). The charged offense involves the laundering of money derived from the sale of illegal drugs. Although defendant is charged with conspiracy to launder money, the underlying criminal activity allegedly occurred as part of a conspiracy to distribute illegal drugs, and defendant faces a sentence of up to 20 years if convicted. See 18 U.S.C. § 1956(a)(2). The Court finds that defendant is charged with a serious

offense involving the operation of a DTO, and defendant faces a lengthy sentence if convicted. The Court also takes into account that defendant is charged with money laundering and drug conspiracy, and the drug conspiracy charged carries a statutory mandatory minimum sentence of 10 years and a possible maximum sentence of life imprisonment. United States of America v. Felix Ordaz-Miranda et al., 18-CR-139-GKF, Dkt. # 17, at 6 (N.D. Okla.). These are also serious criminal charges, and the Court finds that it should take into account all criminal charges pending against defendant when ruling of plaintiff's motion.

The second statutory factor is the weight of the evidence against the defendant. 18 U.S.C. § 3142(g)(2). Plaintiff has provided transcripts of intercepted wire communications, and the evidence shows that defendant was knowingly sending drug proceeds to Mexico. Defendant may not have directly participated in each of the intercepted phone calls, but he is regularly mentioned as an active participant in money laundering activities. At least one of the calls suggests that defendant was taking an increasingly active role in money laundering operations and that Felix Ordaz-Miranda was unhappy about this. Dkt. # 69, at 5. Defendant may not have been the leader of a drug conspiracy, but he did occupy a significant role in moving the proceeds of illegal drug activity to Mexico on behalf of two separate DTOs.

The third factor directs the Court to consider the "history and characteristics" of the accused. § 3142(g)(3). More specifically,

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . .

Id. § 3142(g)(3)(A)-(B). Plaintiff concedes that this factor weighs somewhat in favor of pretrial release. Dkt. # 68, at 8. Defendant has resided in Tulsa for a significant period of time and he has strong family ties to the area. Defendant was employed for Casa Herrera, and he has offered evidence that he could return to work for a former employer if he is released pending trial. Carlos Aguirre testified that defendant resides with his wife, Carlos Aguirre, and Carlos Aguirre's girlfriend. Dkt. # 90, at 37. Two of defendant's sons testified that defendant could reside with them pending trial and that they would cooperate with the probation officer. However, neither of defendant's sons mentioned that defendant's wife is an illegal immigrant, and plaintiff states that it has reason to believe that she "is still in the Northern District of Oklahoma and that she is hiding from authorities." Dkt. # 86, at 5. This raises a concern that defendant was harboring an illegal immigrant before his arrest, and that he has close ties to a person with a strong motivation to leave the country without being noticed by the authorities. This tends to undercut the strength of defendant's ties to the community.

Finally, the Court must consider the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Defendant argues that he presented witness testimony that he is not a violent person and that he would not be likely to pose a danger to any person or the community. However, the safety of the community is a broader concept than acts of physical violence, and safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989). The testimony of Jose Aguirre establishes that defendant would likely return to work for a different check cashing business if he is released pending trial. This raises a significant concern that defendant could engage in the same criminal

9

activity alleged in the indictments in both criminal cases, and this calls into question whether the safety of the community could be ensured if defendant is released pending trial. Defendant may not have any prior criminal history and there is no evidence that he has engaged in violent acts, but the concept of "safety of the community" is not as narrow as defendant suggests. In his response (Dkt. # 91), defendant states that the Court could impose "an additional condition that restricts the [sic] his employment-related activities," but defendant's statement is vague and does not give any indication of what other type of work defendant could perform. Dkt. # 91, at 15.

The Court has considered the four statutory factors, and finds that there is no condition or combination of conditions that will assure the appearance of defendant or the safety of any other person or the community. Defendant does not have any criminal history and he has offered evidence that he is not a violent person. However, there is strong evidence that he played a pivotal role in laundering drug proceeds to Mexico on behalf of two DTOs, and there are intercepted communications discussing defendant's role in the money laundering operations. Defendant's wife is illegally in the United States and plaintiff represents that she is hiding from authorities. This raises the possibility that defendant could go into hiding with her or that he could flee the country. In addition, defendant has offered evidence that he could return to work for a check cashing business. Defendant was arrested based on his employment for a check cashing and money transfer service, and resuming such employment would provide defendant an opportunity to engage in the same conduct alleged in both criminal cases. The Court finds that plaintiff's motion should be granted, and the order releasing defendant pending trial should be revoked. The Court notes that it would reach the same decision even if there were no presumption of detention in this case.

**IT IS THEREFORE ORDERED** that the Government's Motion to Revoke Order Granting Conditions of Release (Dkt. # 86) is **granted**, and the Court finds that defendant should be detained pending trial.

**DATED** this 4th day of September, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE